## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**DON JUAN STAPLES, BEY,**

      **Plaintiff,**

**v.**                                   **Case No. 3:23-cv-00377**

**EVAN WILSON and**
**HURRICANE POLICE DEPARTMENT,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Don Juan Staples,[1] initiated this action against Defendants, Evan Wilson and the Hurricane Police Department, alleging violations of his constitutional rights arising out of a traffic stop and subsequent arrest. (ECF No. 1). Pending before the Court are Defendants' Motion to Dismiss and Motion to Dismiss the Amended Complaint. (ECF Nos. 8, 14). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following

---

[1] Although Plaintiff identified himself to the Court as "Don Juan Staples, Bey" (ECF Nos. 1-2, 1-3) and "Don Juan Staples Bey" (ECF Nos. 1, 1-1), it appears based on other documents he submitted that his legal name is "Don Juan Staples, Jr." (*See* ECF No. 12-1). The defendants in an unrelated lawsuit filed by Staples in this District noted that his legal name is Don Juan Staples and that Bey is a suffix commonly adopted by people with sovereign citizen beliefs. *Bey v. Childress*, No. 2:23-cv-00400 (S.D.W. Va. May 22, 2023), ECF No. 11 at 1 n.1. One defendant in a second unrelated lawsuit filed by Staples went so far as to construct a chart of his legal name over time as compared to the names he has used in his legal filings, showing that "Bey" is not and has never been part of his legal name. *Staples v. Navarra*, No. 2:22-cv-00526 (S.D.W. Va. Nov. 17, 2022), ECF No. 35 at 4 n.2. Consequently, the undersigned will refer to the Plaintiff by his legal surname, Staples.

reasons, the undersigned respectfully **RECOMMENDS** that Defendants' Motions to Dismiss, (ECF Nos. 8, 14), be **GRANTED** and this matter be **DISMISSED**, with prejudice, and removed from the docket of the court.

## I.    <u>Relevant History</u>

Staples filed a complaint under 42 U.S.C. § 1983 against Officer Evan Wilson and the Hurricane Police Department, alleging that he was unlawfully arrested and his phone illegally seized and searched in violation of the Fourth Amendment. (ECF No. 1). Defendants filed a Motion to Dismiss**,** arguing that Staples's claims were inadequately pled; that his claims are barred by a West Virginia statute which prevents recovery where a plaintiff's claims arise out of the plaintiff's commission of a felony, W.Va. Code § 55-7-13d(c); that Officer Wilson is entitled to qualified immunity; and that Staples failed to state a valid claim for *Monell* liability against the Hurricane Police Department. (ECF No. 8). Staples then moved for leave to amend his complaint, and the undersigned granted his motion, noting that Staples was entitled to amend his complaint without leave of court. (ECF Nos. 11, 13). Staples amended the Complaint primarily to correct the name of Officer Evan Wilson (whom he had previously misidentified as "Eric" Wilson) and to add some references to case law and to the United States Constitution. The Amended Complaint omits most of the factual allegations contained in the original, but does explicitly "maintain[] the counts and allegations against the same defendants from the original complaint." (ECF Nos. 1, 12). Defendants, confused as to whether Staples's Amended Complaint qualified as a response to their Motion to Dismiss, filed a Reply, or, in the alternative, a Motion to Dismiss the Amended Complaint. (ECF No. 14). Defendants contend that the same legal arguments in their first Motion to Dismiss also apply to the Amended Complaint. (ECF No. 14 at 2).

Although an Amended Complaint typically supersedes the original and renders it of no legal effect, *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001), the undersigned did not warn Staples of that fact before granting his Motion for Leave to Amend. (*See* ECF No. 13). Staples's Amended Complaint is significantly less detailed than the original and contains almost no factual allegations; however, he clearly intended to adopt the original factual statements and claims in the Amended Complaint. (*See* ECF Nos. 1, 12). In light of his intent, and given that none of the allegations in the Amended Complaint substantially conflicts with those in the original, the undersigned will consider both complaints together. *Owens v. S.C. Dep't of Corr.*, No. CV 1:20-476-BHH-SVH, 2020 WL 4588484, at *3 (D.S.C., Mar. 3, 2020), *report and recommendation adopted*, No. CV 1:20-476-BHH, 2020 WL 3396718 (D.S.C., June 18, 2020) (choosing to treat *pro se* plaintiff's original and amended complaints as one where plaintiff's amended complaint contained significantly less detail than the original); *Smith v. Sunturst Mortg*., Inc./SunTrust Bank, No. 8:19-CV-03274-PX, 2020 WL 4471516, at *1 (D. Md., Aug. 4, 2020) (treating pro se plaintiff's original and amended complaint as one complaint).

Staples alleges that, on December 21, 2021, he was traveling on I-64 East towards Charleston, when he was pulled over by Officer Evan Wilson of the Hurricane Police Department. (ECF No. 1 at 1, 12 at 2). Officer Wilson informed Staples that he pulled him over because he noticed Staples had swerved. (ECF No. 1 at 1). Staples responded that it may have looked like he swerved, but he was only trying to get out of the way of Officer Wilson's police cruiser, which had been behind Staples. (*Id*.). Officer Wilson asked Staples for his driver's license, and Staples handed him a "tribal identification card." (*Id*. at 2). Officer Wilson went back to the police cruiser for fifteen minutes and

then returned to Staples, stating he smelled marijuana in Staples's vehicle, and asked Staples to step out. (*Id.*). Officer Wilson handcuffed Staples, while a second officer searched the vehicle and found a firearm which belonged to Staples's "consort," whom is later identified as Staples's wife. (*Id.*, ECF No. 12 at 2). Officer Wilson then placed Staples in the police cruiser and took him to the Hurricane Police Department. (ECF No. 1 at 2). Staples alleges that he received a phone call from his wife while at the Police Department, and Officer Wilson told her to bring Staples's Moorish National paperwork to the police station. (*Id.*). At the police station, Staples's wife spoke to Officer Wilson, who tried to coerce her into admitting that she had purchased the gun for Staples. (*Id.*). Although Officer Wilson was unsuccessful in getting a statement from Staples's wife, Staples was jailed overnight and posted bail the next morning. (*Id.*). When he tried to retrieve his cell phone from police custody, Officer Wilson "attempted to keep his mobile phone under false pretenses", telling Staples that the phone was under investigation and would be returned to him when the investigation was completed. (ECF Nos. 1 at 2, 12 at 2). Staples told Officer Wilson that he used his phone for business, but Officer Wilson would not return the phone unless Staples unlocked it. (ECF Nos. 1 at 2, 12 at 2). After several minutes, Staples unlocked the phone, and Officer Wilson took the phone to another room "in an attempt to erase the voice recording of the initial traffic stop." (ECF No. 1 at 2). When Officer Wilson was unable to erase the recording, he returned the phone. (*Id.*).

In the original Complaint, Staples states that he is entitled to relief under the Fourth Amendment, 42 U.S.C. § 1983, 18 U.S.C. § 242, and 18 U.S.C. § 245. (ECF No. 1 at 2). He states that Officer Wilson's conduct "caused [Staples] to suffer obstruction of travel, property search, trespass, theft, carjacking, and interference with commerce."

(*Id.*). The Amended Complaint uses a convoluted citation system to explain the legal basis for his claims, quoting a factual allegation from earlier in the Amended Complaint and then listing abbreviated constitutional amendments.[2] Staples includes a list of the alleged constitutional violations:

1. "pulled Plaintiff over without any suspicion of committing a crime",
2. "mistook Plaintiff for someone else",
3. "threatened to forcibly remove Plaintiff from automobile if Plaintiff did not comply",
4. "detained Plaintiff with handcuffs and proceeded to search the automobile without Plaintiff's consent",
5. "did not find any marijuana in the automobile but located a 38-caliber revolver registered to Plaintiff's wife",
6. "kidnaps Plaintiff and jails overnight"
7. "attempted to keep Plaintiff's mobile phone under false pretenses"
8. "disinclined to return Plaintiff's mobile phone unless Plaintiff unlocked the device. Under duress and coercion, Plaintiff complied.
9. "took the mobile device behind closed doors and attempted to delete the recording of the traffic stop"

(ECF No. 12 at 3–5). Staples indicates that each violation implicates multiple constitutional protections, with the Fourth and Fifth Amendments being cited most frequently. (*See id.*).

Staples requests compensatory damages in the amount of $3,150,000. (*Id.* at 6). The amount is based on a "fee schedule" which Staples attaches to the Amended Complaint. (ECF No. 12-1). Staples provides a list of actions accruing damages, including "unauthorized citation", "warning issued on paper", "summons, court notices (without contract)", "other related items, fees, or offers", "fingerprinting", "photographing",

---

[2] For example: "6. '… pulled Plaintiff over without any suspicion of committing a crime.'
    A.   AM 4      I am safe from any unwarranted searches/seizures
    B.   AM 4      any action against me must be fully described in writing, issued by a court of law, signed by a judge, and sworn on oath
    C.   AM 5      no person to be forced to say or do anything that could be used against him later
    D.   AM 5      no person to be deprived of anything without due process
    E.   AM 9      all rights belong to the people some are stated, and some are not"
    (ECF No. 12 at 3).

"taking/theft/deprivation of property", "jailed, warehousing, incarceration", "forced giving of fluids/samples", and "autograph under threat, duress, or coercion." (*Id.*).

Staples attaches several other documents to his Amended Complaint, including a UCC financing statement, (ECF No. 12-1 at 4–5); two certificates of incorporation for two West Virginia businesses held by Staples, (ECF No. 12-1 at 6–7); and a notarized affidavit by Staples, dated June 16, 2023, relating to Staples's supposed rights and obligations under "Commercial Law." (ECF No. 12-2). None of these documents has any apparent relevance to the Amended Complaint, nor are they referenced in the Amended Complaint.

## II.    **Standard of Review**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). As the purpose of Rule 12(b)(6) is limited to evaluating the adequacy of the complaint, the court does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  When considering the motion, the court must assume that the facts alleged in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). However, the court "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a complaint will not "suffice if it tenders naked assertions devoid of further factual

6

enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A complaint is sufficient to withstand a motion to dismiss when the allegations are "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, but cannot survive such a motion when it lacks "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In resolving a motion to dismiss, the court is generally limited to the allegations of the complaint itself, any documents attached as exhibits, and those incorporated into the complaint by reference. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). Nevertheless, there are some exceptions to this rule. Courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. Furthermore, Courts may consider documents attached to a 12(b)(6) motion, without converting it to a motion for summary judgment, "when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n. 1 (7th Cir. 2021). Finally, a court may consider matters of which the court can take judicial notice. Fed. R. Civ. P. 12(c). *Golden Corral Corp. v. Illinois Union Insurance Company*, 559 F. Supp.3d 476, 482 (E.D.N.C. 2021) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007)).

Courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*,

148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    <u>Discussion</u>

Staples brings this action under 42 U.S.C. § 1983. A claim under 42 U.S.C. § 1983 has two essential elements: there was a violation of the plaintiff's rights under the Constitution and laws of the United States, and the alleged violation was committed by a person acting under color of state law. *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). Defendants assert that Staples has not adequately pled any constitutional violations. They note that Staples "does not allege an illegal search or seizure, or that he was randomly pulled over by the Hurricane PD without probable cause," and that "he does not allege how or why the alleged taking of his phone by the police" deprived him of his constitutional rights." (ECF No. 8 at 7). Further, Defendants contend that, because Staples has not plausibly alleged a violation of a clearly established constitutional right, Officer Wilson is entitled to qualified immunity. (ECF No. 8 at 10).

Defendants argue that Staples' Complaint and Amended Complaint are "nearly indecipherable" and "nonsensible gibberish." (ECF Nos. 8 at 5, 14 at 2). Staples appears to participate in the "sovereign citizen" movement, whose adherents posit that they are not citizens of the federal government and are not bound by federal or state law. *See generally,* Samuel Barrows, *Sovereigns, Freemen, and Desperate Souls: Towards A Rigorous Understanding of Pseudolitigation Tactics in United States Courts*, 62 B.C. L. Rev. 905 (2021) (describing common features in legal filings by "sovereign citizens");

Francis X. Sullivan, *The "Usurping Octopus of Jurisdictional Authority": The Legal Theories of the Sovereign Citizen Movement*, 1999 Wis. L. Rev. 785 (1999) (describing the most common beliefs and legal theories of "sovereign citizens"). While Staples's sovereign citizen beliefs are not determinative of his constitutional claims, they are raised in Defendants' Motion to Dismiss and are thus mentioned here. (ECF No. 8 at 2–3). Defendants also draw the Court's attention to Staples's significant criminal history and  other filings in federal and state courts, (ECF No. 8 at 1 n.1, 2 n.2), relying in part on his prior litigation as a grounds for rejecting this action. Although Staples's history may prove relevant at a later stage in the litigation, at this juncture, the Court must only consider whether the Complaint and Amended Complaint are sufficient to state a plausible claim. Accordingly, the undersigned examines each of Staples's claims applying the relevant standard of review. Because the undersigned concludes that Staples fails to state a plausible cause of action, Officer Wilson's qualified immunity and state statutory defenses need not be addressed.

### A. Legality of Traffic Stop

Staples alleges that Officer Wilson "pulled Plaintiff over without any suspicion of committing a crime." (ECF No. 12 at 2). This allegation clearly raises the specter of a Fourth Amendment violation in the form of an illegal stop, as officers may not initiate a traffic stop without reasonable suspicion of criminal activity or probable cause to believe a traffic violation has occurred. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). The facts supplied in Staples's original Complaint make clear that Officer Wilson had sufficient cause to stop Staples. Staples alleges that, once

pulled over, Officer Wilson explained that he saw Staples's vehicle swerve, and Staples concedes that it may have appeared that his vehicle swerved. (ECF No. 1 at 1). Swerving between lanes is a violation of W. Va. Code § 17C-7-9(a)(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."). Thus, assuming the facts alleged in the Complaint to be true, Officer Wilson had probable cause to  believe that Staples committed a traffic violation, making the traffic stop lawful. *United States v. Garcia,* 853 Fed. Appx. 825, 827 (4th Cir. 2021) (holding that if the officer "had a 'reasonable ground for belief' that Garcia committed a traffic violation, even a minor one, he lawfully initiated the traffic stop.") (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Even if Staples claimed that Officer Wilson was mistaken about the swerving, only an unreasonable mistake of fact would render the stop unconstitutional, *see United States v. Arias*, 213 Fed. Appx. 230, 233 (4th Cir. 2007), and Staples effectively admits that he improperly moved between lanes. (ECF No. 1 at 1) (stating that he told Officer Wilson that "it may have appeared that he swerved when he was only trying to move out of the fast lane"). Therefore, the undersigned **FINDS** that Staples has not plausibly stated a Fourth Amendment violation for an unlawful stop.

### B. Search of Vehicle and Arrest

Next, Staples challenges various aspects of the traffic stop and his arrest. Staples claims that Officer Wilson requested Staples's driver's license, and he provided "a tribal identification card." (ECF No. 1 at 2). Officer Wilson took the document to his official vehicle, returned fifteen minutes later, and asked Staples to "step out of [his] vehicle" because the vehicle smelled like marijuana. (*Id.*). Officer Wilson threatened to forcibly

remove Staples from his car if he did not comply, causing Staples to exit his vehicle under duress and coercion. (ECF No. 12 at 2; ECF No. 1 at 2). Officer Wilson handcuffed Staples. (*Id.*). Then, without his consent, either a second officer, (ECF No. 1 at 2), or Officer Wilson, (ECF No. 12 at 2), proceeded to search Staples's vehicle. No marijuana was found, but a .38-caliber revolver registered to Staples's wife was located in the car. (ECF No. 12 at 2; ECF No. 1 at 2). Officer Wilson 'kidnapped' Staples and jailed him overnight. (ECF No. 12 at 3–4). None of these allegations, taken individually or together, state a claim for a Fourth Amendment violation.

Staples first challenges Officer Wilson's statement that he could remove Staples from the vehicle if he did not voluntarily step out of his car. The Supreme Court has held that an officer does not violate the Fourth Amendment by asking a driver to step out of the vehicle during a lawful traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Further, when a driver refuses to step out of the vehicle, an officer may use reasonable force to remove him. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 901 (4th Cir. 2016) ("Noncompliance with lawful orders justifies some use of force, but the level of justified force varies based on the risks posed by the resistance."); *Nazario v. Gutierrez*, No. 2:21CV169 (RCY), 2022 WL 3213538, at *11 (E.D. Va., Aug. 9, 2022*)* ("When police lawfully order a driver to exit his vehicle and the driver refuses, police may use reasonable force to remove the driver."). Therefore, the undersigned **FINDS** that Officer Wilson did not violate any of Staples's constitutional rights by asking him to step out of the vehicle and warning that he could be physically removed if he did not

comply.

Staples also challenges the search of his vehicle. Warrantless searches are *per se* unreasonable under the Fourth Amendment, "subject only to a few well established exceptions." *United States v. Jones*, No. CR ELH-22-0371, 2023 WL 4627284, at *13 (D. Md. July 18, 2023) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). The automobile exception to the warrant requirement provides that police may search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Brookins*, 345 F.3d 231, 235 (4th Cir. 2003). Staples alleges in his Complaint that Officer Wilson said he smelled marijuana emanating from Staples's vehicle. (ECF No. 1 at 2). The undersigned **FINDS** that the scent of marijuana provided Officer Wilson probable cause to search the vehicle, *see U.S. v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) ("[B]ecause marijuana has a distinct smell, the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage"), and Officer Wilson did not need Staples's consent to search. *United States v. Taylor,* 572 F. Supp.3d. 199, 210-11 (D.S.C. 2021).

Staples sets out as a separate constitutional violation that Officer Wilson "did not find any marijuana in the automobile but located a .38-caliber revolver registered to Plaintiff's wife." (ECF No. 12 at 4). Staples's reason for listing this occurrence as a separate violation is not entirely clear; however, if he intends to argue that Officer Wilson must have been lying about the scent of marijuana because none was found in the vehicle, that position is unpersuasive given that the odor of marijuana can linger even after the marijuana is removed from the area. *Taylor,* 572 F. Supp.3d. at 211; *also United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("While smelling

12

marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is.") (collecting cases). If Staples's intent is to emphasize that the revolver belongs to his wife, that does not mitigate the fact that Staples was found alone in his vehicle with a firearm, which he is not permitted to possess due to his status as a felon. *See* W. Va. Code §§ 61-7-7(a)(1); 61-7-7(b). Therefore, the undersigned **FINDS** that Staples has not plausibly stated a claim that the search of his vehicle violated the Fourth Amendment.

Staples also challenges his arrest as unlawful, alleging that Officer Wilson "kidnap[ped]" him and jailed him overnight. (ECF No. 12 at 2). To state a claim for unlawful arrest in violation of the Fourth Amendment, the plaintiff must allege that the arrest was not supported by probable cause. *See Maryland v. Pringle,* 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause."); *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007); *Brooks v. City of Winston-Salem*, N.C., 85 F.3d 178, 181 (4th Cir. 1996). Probable cause exists when, looking at the totality of the situation at the time of the arrest, "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000). Probable cause requires more than a mere suspicion, but does not require evidence sufficient to obtain a conviction. *Wong Sun v. United States,* 371 U.S. 471 (1963). Staples admits in his Amended Complaint that Officer Wilson retrieved a gun from Staples's car. (ECF No. 12 at 2). While Staples nowhere in his complaints mentions why he was

arrested, Defendants provide in their Motion to Dismiss that Staples had a prior felony conviction for armed robbery, which made his possession of the firearm a felony in violation of W. Va. Code § 61-7-7(b).[3] (ECF No. 8 at 2). According to records of the Circuit Court of Putnam County, West Virginia, a criminal complaint was prepared by Officer Wilson on December 21, 2021 charging Staples with being a felon in possession of a firearm in violation of W. Va. Code § 61-7-7(b). *See State of West Virginia v. Staples,* Case No. CC-40-2022-B-7 (Cir. Ct. Put. Cty. W. Va. Jan. 10, 2022), at Doc. 1. Officer Wilson noted in the complaint that he stopped Staples's vehicle on Interstate 64 after observing it swerve between lanes multiple times. When Officer Wilson smelled a strong odor of marijuana coming from the vehicle, he asked Staples to exit the vehicle and detained him so that a search could be safely conducted. *Id.* The search yielded a loaded Charter Arms .38-caliber pistol in the center console of the vehicle. *Id.* Staples, who was the only occupant of the vehicle, was determined to be a felon based upon a 1994 aggravated robbery conviction in West Virginia. Accordingly, he was placed under arrest and taken to the Hurricane Police Department for booking and processing. *Id.* Staples was released on bond the following day. *Id.* After a preliminary hearing on January 6, 2022, the Magistrate found probable cause to support the charge against Staples and bound the matter over to the Circuit Court of Putnam County, West Virginia for further proceedings. *Id.*

In view of his prior felony conviction, Staples does not refute—and cannot plausibly contend—that his possession of a loaded .38-caliber pistol was not a crime.

---

[3]A court may consider information in the public record, including dispositions of criminal cases, when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, *Inc.*, 998 F.2d 1192, 1197 (3d Cir.1993) (holding matters of public record a court may consider on a motion to dismiss "include criminal case dispositions such as convictions or mistrials").

Once Officer Wilson found the firearm in the center console of the car, with Staples as its lone occupant, and confirmed that Staples was a felon, Officer Wilson had probable cause to arrest Staples. *United States v. Joseph*, No. 2:22-CR-00093, 2022 WL 17976790, at *8 (S.D.W. Va. Dec. 28, 2022) (citing *Maryland v. Pringle*, 540 U.S. 366, 372 (2003)). Accordingly, the undersigned **FINDS** that Staples has not plausibly stated a claim for unlawful arrest.

### C. Seizure and Search of Cell Phone

The remaining allegations relate to Officer Wilson's conduct regarding Staples's cell phone. After Staples was jailed overnight, Officer Wilson allegedly refused to return Staples's cell phone and tried to keep it "under false pretenses, claiming it was under investigation." (ECF No. 12 at 2). Officer Wilson would not return the phone to Staples until Staples unlocked it for him, which Staples did. (*Id.*). Then Officer Wilson took the phone into another room and tried to delete a recording of the traffic stop. (*Id.*). Neither complaint states how Officer Wilson initially took possession of Staples's phone, but, presumably, it was seized and inventoried when Staples was arrested. There are three separate strains of inquiry related to Officer Wilson's alleged treatment of the cell phone: Wilson's temporary retention of the cell phone after Staples's release on bond; the search of its digital contents; and Officer Wilson's alleged attempt to delete a videorecording on the cell phone. The undersigned addresses each issue separately.

Staples provides no information about the initial seizure of the cell phone, but he suggests that it was illegal for Officer Wilson to briefly keep Staples's phone after his release on bond: "Defendant, Evan Wilson attempted to keep Plaintiff's mobile phone under false pretenses, claiming it was under investigation." (ECF No. 12 at 2). Staples alleges that Officer Wilson tried to keep the phone under 'false pretenses," (ECF No. 12

at 2), but, without specifying what those pretenses were, the allegation amounts to mere speculation. *See Hopper v. Salazar*, No. 321CV00636FDWDSC, 2022 WL 17722403, at *5 (W.D.N.C., Dec. 15, 2022) (dismissing as speculative and conjectural plaintiff's assertion that police officer seized plaintiff's phone as part of a "fishing expedition" to charge plaintiff with a crime). The only question raised by Staples's allegation, then, is whether Officer Wilson could keep the phone for investigatory purposes after Staples's release, and how long he could keep it. Cases applying the exclusionary rule in criminal cases suggest that Officer Wilson could not have kept possession of the phone indefinitely without obtaining a search warrant. *See United States v. Pratt,* 915 F.3d 266, 271 (4th Cir. 2019) ("A seizure that is lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests.") (internal quotations omitted); *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020) (finding a month long delay between the seizure of defendant's cell phone and the officer's application for a search warrant was unreasonable); *United States v. Grills*, No. 18-CR-228-JPS, 2019 WL 5587328, at *8 (E.D. Wis., Oct. 30, 2019) (finding a 55-day delay in obtaining a search warrant unreasonable). However, Staples does not allege that Officer Wilson kept the phone indefinitely, or even for an extended period of time. (*See* ECF Nos. 1 at 2, 12 at 2). Instead, the Complaint and Amended Complaint indicate that Officer Wilson only had the phone for a short period of time after Staples was released from custody. (*See* ECF Nos. 1 at 2, 12 at 2). According to the Complaint, Staples went to the Hurricane Police Department the day after bail was posted and asked for his cell phone. (ECF No. 1 at 2). He was told that the phone was being held for examination and could not be returned until the investigation was completed. Staples told law enforcement  staff that he used the phone for business purposes and demanded

16

its return. Shortly after he agreed to unlock the phone and allow Officer Wilson an opportunity to examine it, the phone was provided to him. (*Id*.). The Complaint indicates that Staples left the Hurricane Police Department with the phone in his possession. (*Id*.). The ultimate question in Fourth Amendment cases is whether the officer's conduct was reasonable, *see Kentucky v. King*, 563 U.S. 452, 459 (2011)*,* and Staples has not pleaded sufficient factual allegations to suggest that Officer Wilson's seizure of his cell phone was unreasonable. Therefore, the undersigned **FINDS** that Staples fails to state a plausible claim related to Officer Wilson's possession of the phone that rises to the level of a constitutional violation.

Next, related to the search of the phone, Staples alleges, "Defendant, Evan Wilson was disinclined to return Plaintiff's mobile phone unless Plaintiff unlocked the device. Under duress and coercion, Plaintiff complied. Defendant, Evan Wilson took the mobile device behind closed doors and attempted to delete the recording of the traffic stop." (ECF No. 12 at 2). These factual allegations, assumed as true, describe a search of the phone's digital contents without a warrant. The Supreme Court has held that, absent an applicable exception, law enforcement generally must secure a warrant before searching the digital contents of a legally seized cell phone. *Riley v. California*, 573 U.S. 373, 403 (2014). But a warrantless search is lawful when done pursuant to valid, voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). A search with consent is valid even where the officer would not have had probable cause to secure a warrant. *Id.* at 227–228; *United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995) ("A defendant who voluntarily consents to a search waives his Fourth Amendment rights, and the police officer may conduct the search without probable cause or a warrant."). In this case, Staples consented to the search by unlocking the phone for Officer Wilson. *See United*

*States v. Woodland*, 285 F. Supp. 3d 864, 874 (D. Md. 2018) (finding defendant consented to search of phone by unlocking it for police officer). Staples's allegation that he complied "under duress and coercion" is a "naked assertion devoid of further factual enhancements" and thus is insufficient to support a plausible cause of action.

"In assessing voluntariness of the consent, [courts] examine the totality of the circumstances including factors such as the characteristics of the accused, his education and intelligence, the number of officers present, along with the location and duration of the [encounter]. Whether the person giving consent knew that he possessed a right to refuse consent also is relevant in determining the voluntariness of consent." *United States v. Digiovanni*, 650 F.3d 498, 514 (4th Cir. 2011) (quoting *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007), as amended (Aug. 2, 2011)). When Staples went to collect his cell phone, he was not under arrest, or in the middle of a tense law enforcement situation. He was simply at the police station asking for his belongings. Staples is a businessman, familiar with the criminal justice system, the law, and his constitutional rights. In his pleadings, Staples does not describe being threatened in any manner, nor does he allege any interactions with Officer Wilson that could be construed as intimidating. Staples indicates that he did not agree to unlock the phone immediately, demonstrating that he deliberated over his options before agreeing to cooperate. (ECF No. 1 at 2). It was only after Staples thought about it and decided that it was more important to get his phone back than to prevent Officer Wilson from examining the phone's contents that he made the decision to give consent. (*Id.*). The facts related by Staples do not reflect consent given under duress, but rather convey a pragmatic decision made by Staples, who apparently was not overly concerned that the phone's contents were inculpatory; and apparently, the contents were of no consequence, as the

18

phone was returned rather quickly to Staples after it was examined. Given Staples's cooperation, Officer Wilson reasonably understood Staples to voluntarily consent to the search. *Sutherlin v. Smith*, No. 4:15-CV-00037, 2016 WL 4183354, at *7 (W.D. Va. Aug. 5, 2016). Staples's consent was not rendered involuntary by Officer Wilson's truthful statement that the phone would not be returned until the investigation was completed. *See United States v. Peterson*, No. 3:18-CR-00049 (JCH), 2018 WL 6061571, at *11 (D. Conn., Nov. 20, 2018) (finding defendant's consent to search phone voluntary even where officer repeatedly threatened that the defendant would "never see his phone again", since the officer later explained the phone would be kept while it was under investigation); *see also United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir. 1987) ("Truthful statements about [the defendant's] predicament are not the type of 'coercion' that threatens to render a statement involuntary."). Accordingly, the undersigned **FINDS** that Staples has not stated a claim for a Fourth Amendment violation related to the search of the phone's digital contents.

Finally, Staples challenges Officer Wilson's alleged attempt to delete a video recording on Staples's cell phone. (ECF No. 12 at 2, 5). The Amended Complaint ties this allegation to several constitutional rights, including the only right that seems even tangentially related, the Fifth Amendment right prohibiting the deprivation of property without due process of law. (ECF No. 12 at 5). There would potentially be a claim[4] against Officer Wilson if the Amended Complaint alleged that Officer Wilson had successfully

---

[4] Technically, it would be a Fourteenth Amendment claim, as the Fourteenth Amendment incorporated the Fifth Amendment's due process protections against the states. *See Harris v. Paluch,* No. 91 C 362, 1991 WL 18203, at *1 (N.D. Ill., Jan. 25, 1991) ("[T]he Fifth Amendment applies only to the federal government and not to state actors. To be sure, it has become a matter of convenience in Section 1983 lawsuits (though technically imprecise) to refer to the underlying Bill of Rights guaranties rather than simply to the Fourteenth Amendment (which incorporates them by reference)—but the Fifth Amendment, at least as potentially implicated in this Complaint, provides no protections that are not spelled out in the Fourteenth Amendment directly rather than by incorporation.").

deleted an audio recording from the phone, although even the actual destruction of property may not amount to a constitutional violation, according to the *Parratt-Hudson* doctrine. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available."); *Carter v. Lassiter*, No. 1:18-CV-275-FDW, 2019 WL 6048043, at *5 (W.D.N.C., Nov. 14, 2019) ("Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy."). But Staples merely asserts that Officer Wilson "attempted to delete" a recording. (ECF No. 12 at 2, 5). Staples has not provided, and the undersigned has not found, any legal authority suggesting that a brief attempt to destroy property would itself amount to a deprivation of property cognizable under the Fifth Amendment. Therefore, the undersigned **FINDS** that Staples has not stated a plausible claim related to the alleged attempt to delete a recording on his cell phone.

### D. Miscellaneous Claims

Staples asserts that Officer Wilson "mistook [Staples] for someone else" without any further factual explanation or support. (ECF No. 12 at 3). Staples suggests that this "mistaken identity" is a constitutional violation and references the Fifth, Sixth, Ninth, Tenth, and Thirteenth Amendments, but the undersigned is unable to discern any factual or legal basis to state a constitutional violation. To the extent that Staples may be attempting to allege any other constitutional violations arising out of the events described in his Complaint and Amended Complaint, the undersigned **FINDS** that he

has not clearly alleged a sufficient factual or legal basis for those violations. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments.").

Staples additionally accuses Officer Wilson and the Hurricane Police Department of "ledgering" in violation of 18 U.S.C. § 241. (ECF No. 12 at 3). Title 18 U.S.C. § 241 is a federal criminal statute that prohibits two or more persons from conspiring to deny another person of his rights or privileges under the Constitution or laws of the United States. However, criminal statutes generally do not give rise to private causes of action, as "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). For a private cause of action to exist, Congress must create such a right in "clear and unambiguous terms" in the statute. *Gonzaga Univ. v. Doe,* 536 U.S. 275, 290 (2001). Where a "statute by its terms grants no private rights to any identifiable class," there is no private cause of action. *Id.* at 284 (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 576,(1979)); *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (holding that "§ 1983 creates a cause of action to enforce a federal statute only when the underlying statute itself unambiguously confers an individual right on the plaintiff." (markings and citation omitted). Congress did not unambiguously create a private cause of action under 18 U.S.C. § 241. *Lewis-Davis v. Baltimore Cnty. Pub. Sch. Infants & Toddlers Program*, No. CV ELH-20-0423, 2021 WL 1720235, at *17 (D. Md. Apr. 30, 2021) (citing *Davis v. Sarles*, 134 F. Supp. 3d 223, 228 (D.D.C. 2015)). In the absence of a private cause of action, Staples cannot pursue a claim against the defendants. Therefore, the undersigned **FINDS** that Staples fails to state a viable claim pursuant to

the statute.

### E.  Hurricane Police Department

In addition to suing Officer Wilson, Staples has also sued the Hurricane Police Department ("HPD"). Staples only alleges wrongdoing by Officer Wilson, and provides no separate allegations regarding the Hurricane Police Department. (*See* ECF Nos. 1, 12). *Respondeat superior*, the theory of liability under which an employer is liable for the acts of an employee done in the course of business, does not apply to § 1983 lawsuits. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). A local government will only be liable for the actions of its employee where the employee was acting pursuant to the government's unconstitutional policy or custom. *Id.* Because there are no allegations in the Complaint or Amended Complaint suggesting that Officer Wilson was acting pursuant to an official policy or custom of the HPD, the undersigned **FINDS** that Staples has failed to state a claim for relief against the Hurricane Police Department.

### IV.  <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Defendants' Motions to Dismiss, (ECF Nos. 8, 14), be **GRANTED,** and that this civil action be **DISMISSED,** with prejudice, and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail)

from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED**: August 9, 2023

Cheryl A. Eifert
United States Magistrate Judge